```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
```
**LEXINGTON**

```
WEST AMERICAN INSURANCE CO.,  )
                              )
     Plaintiff,               )
                              )  Civil Action No. 5:04-510-JMH
v.                            )
                              )
                              )  MEMORANDUM OPINION AND ORDER
RICHARD H. PREWITT,           )
                              )
     Defendant.               )
                              )
```

                  \*\*    \*\*    \*\*    \*\*    \*\*

Currently pending before the Court are two motions. Defendant filed a motion for reconsideration of the Court's earlier order denying his motion to dismiss [Record No. 6]. Plaintiff subsequently moved for summary judgment [Record No. 12]. All responses and replies having been filed, these matters are now ripe for review.

**FACTUAL BACKGROUND**

In 1981 Robert Hensley bought a 37 foot sailboat. He kept the boat in Maryland and made annual sailing trips, and he also leased the boat out for charters for several years. Since 1987, Hensley has not maintained any insurance on the boat.

In 2003 Hensley invited Defendant Richard H. Prewitt to join him on his boat for an extended sailing trip from Maryland to Florida and possibly the Dry Tortugas. Hensley and Prewitt had known each other since the 1970s, were friends, and had sailed together several times, although never on such a long trip.

Prewitt had never done overnight sailing before.

On June 10, 2003, Prewitt and Hensley departed from Maryland sailing south. Since there is nowhere to stop in the ocean, the two men alternated at the helm in four-hour shifts and sailed through the nights. They rotated for three weeks without deviation from the schedule. Generally, the person at the helm set the course in response to the conditions, and Prewitt did not have to consult with Hensley regarding alterations in the course, although Hensley, as the boat's owner, could have overruled Prewitt if he wished.

Sometime on the night of June 30, 2003, Hensley turned over the helm to Prewitt.[1] Unlike at the beginning of most shifts, on that night Hensley directed Prewitt to steer a specific course on a heading between 200 and 210 degrees to avoid running aground on Carysfort Reef. Hensley went below to sleep, where he remained for approximately one hour until the boat ran aground on the reef. Prewitt had adjusted course from a heading of 210 to 200 after realizing that the prior heading would lead into the reef, but the correction was insufficient to avoid running aground.

The boat came to a stop on top of the reef, and the hull filled with water. Although there was a dinghy, Hensley did not

---

[1] The depositions differ as to the exact time of the shift change and the crash, but both Hensley and Prewitt place the crash about one hour after the shift change. The small differences in timing are not material to the resolution of these motions.

offload any of his personal property, and by the time that help arrived around 11:00 a.m. the next day, the personal property was destroyed. A salvage company was contacted but was unable to salvage the boat from the reef. They recommended to Hensley another salvage company with better equipment, but Hensley never called that company or made any other attempt at salvaging his boat. As a result, the boat was totally destroyed.

Prewitt has described various pieces of equipment on the boat that were either broken or not working as a result of a lack of electrical power on the night of the accident. West American has not disputed these descriptions.

## PROCEDURAL BACKGROUND

In October of 2003, Hensley brought a negligence action against Prewitt in Clark County Circuit Court, Case No. 03-CI-00570. Prewitt's insurance company, West American Insurance Company, agreed to provide him with a defense subject to a reservation of the right to challenge whether Prewitt's coverage applied.

West American filed the instant action seeking declaratory judgment in November of 2004. West American seeks a judgment declaring that Prewitt's homeowner's policy, No. FHW09181309, does not cover damage to Hensley's boat or require West American to pay

3

for Prewitt's legal defense in the state court action.[2]

In December of 2004 Prewitt filed a motion to dismiss [Record No. 2], arguing that the Court should decline to exercise jurisdiction because the underlying factual issues were still in dispute in state court. The Court denied this motion [Record No. 5], finding that the exercise of jurisdiction over this matter would not interfere with the state court litigation, and that there did not appear to be any factual disputes that would require abstaining from hearing the case. Prewitt filed a motion for reconsideration [Record No. 6], one of two motions that is before the Court at this time. The parties agreed to conduct discovery for a limited amount of time, and subsequently West American filed its motion for summary judgment [Record No. 12].

## DISCUSSION

**I. Prewitt's Insurance Policy**

This action requires the Court to interpret the language of an exclusion in Prewitt's homeowner's insurance policy. The parties agree that Kentucky law controls, and in Kentucky the interpretation of insurance contracts is a matter of law for the Court. *See Kemper Nat'l Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002).

---

[2] At one point the parties disputed which insurance policy applied, but they later stipulated that the policy attached to Plaintiff's complaint was in fact the applicable policy [Record No. 18].

4

Prewitt's policy insures him against liability for damage to the property of third parties, subject to certain exclusions. The sole exclusion at issue in this case, exclusion 2(c), states that personal liability coverage "does not apply to . . . '[p]roperty damage' to property rented to, occupied or used by or in the care of the 'insured.'"[3] The resolution of the coverage dispute turns on whether Hensley's boat was property "used by" or "in care of" Prewitt at the time of the accident.

## II.  Remaining Issues of Disputed Fact

The resolution of both pending motions depends in part on whether material facts remain in dispute. For the motion to reconsider, remaining disputes of material fact might lead to a finding that this Court should defer to the ongoing state court litigation. For the motion for summary judgment, of course, disputed issues of material fact would prevent the Court from granting summary judgment.

---

[3] One other exclusion is mentioned in the parties' briefs, but it is not applicable and does not affect the outcome of the instant motions. Exclusion 1(g) excludes liability coverage for property damage arising out of the use of certain watercraft, but the exclusion does not apply to sailboats over 26 feet in length such as Hensley's boat. As the Kentucky Supreme Court recently noted, "[b]ecause an exclusion is not an affirmative grant of coverage – and each exclusion is independent of all others – any applicable exclusion is sufficient to remove coverage. In other words, if any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions." *Kemper*, 82 S.W.3d at 874. The fact that exclusion 1(g) does *not* exclude coverage should not lead the Court to infer that exclusion 2(c) *does* exclude coverage.

5

Upon examination of the record it is clear that there are no remaining disputed issues of material fact. Both parties agree with the general description and timeline of the accident. Both parties agree that from the time the trip commenced, Hensley and Prewitt rotated four-hour shifts at the helm like clockwork. Both parties agree that Prewitt was at the helm and Hensley was asleep below at the time of the collision. Both parties agree that although it was Hensley's boat, Prewitt generally had discretion to set the boat's course while he was at the helm, and that there was no need for him to consult Hensley before making changes to the heading in response to conditions. Both parties agree that Hensley had chosen the general route for the trip, and that on the night of the accident Hensley gave Prewitt a specific range of headings to follow.

Prewitt suggests that factual issues regarding the state of repair of various pieces of equipment remain in dispute, and therefore that the Court should defer to the state court's resolution of its litigation, or at least not grant summary judgment. West American does not address whether Prewitt's description of the equipment is accurate, but instead claims that the state of the equipment is not material to resolving the coverage dispute. The Court agrees. Although whether the boat's equipment was properly functioning may be material to resolving issues of negligence and comparative negligence in state court, the

6

state of the equipment is not material to whether the boat was in care of or being used by Prewitt.

### III. Defendant's Motion for Reconsideration

In its opinion denying Prewitt's motion to dismiss, the Court weighed the factors for determining whether to exercise jurisdiction over a declaratory judgment action as articulated by the Sixth Circuit:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000). The Court held that a judgment would settle the insurance coverage controversy and would neither interfere with the state court case nor create friction between state and federal courts. Moreover, the Court held that the declaratory judgment action was being brought in good faith and not for improper purposes, and that although West American could have intervened in state court, it was entitled to choose federal court under the statute.

No facts have arisen in discovery that change the Court's

weighing of these factors. The proceeding in state court will determine whether Prewitt was negligent, and whether Hensley was comparatively negligent. It is to these determinations that Prewitt's claims about Hensley's failure to properly maintain working navigational equipment are relevant. Prewitt argues that Hensley's failure to maintain the equipment is evidence that Hensley, not Prewitt, was in control of the boat. However, it is not disputed that Hensley had ultimate control over the boat; the issue is whether at the time of the accident the boat was being used by or was in care of Prewitt. Resolution of whether the boat's equipment was functioning properly would not tell the Court anything about the applicability of the exclusion.

**IV.   Defendant's Motion for Summary Judgment**

*A.   The Summary Judgment Standard*

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "Upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, particularly where there has been an opportunity for discovery." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (2004) (citing *Celotex Corp. v. Catrett*,

8

477 U.S. 317 (1986)) (internal citations omitted). In considering the motion, the Court must construe the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

As noted above, there are no disputed issues of material fact, and the interpretation of an insurance contract is a matter of law for the Court. Therefore, it is appropriate for the Court to consider and rule on the motion for summary judgment.

*B. The Exclusion: Plain Meaning*

The proper interpretation of an insurance contract depends on the plain meaning of its language in light of any applicable precedent. Both parties submit that there are no reported cases dealing with an identical contract provision in a similar situation, and the Court's own research confirms this. Opinions addressing similar provisions have all arisen out of commercial general liability policies rather than homeowner's policies, and the language often differs slightly in various ways. Therefore, the Court begins with the plain meaning of the exclusion.

To use something is "to put into action or service; avail oneself of . . . [or] to carry out a purpose or action by means of." *Merriam-Webster Online Dictionary*, *at* http://www.m-w.com. *Roget's* lists control, handle, and operate as synonyms for the verb

use.[4]  *See Roget's New Millennium Thesaurus* (1st ed. 2005), *available at* http://thesaurus.reference.com.

When two friends go sailing, it would stretch the English language to say that they are not both using the boat. Prewitt in his deposition and in his response to the motion for summary judgment claims that he was not using the boat; instead, he says, Hensley was using him. That Hensley needed assistance to be able to sail from Maryland to the Dry Tortugas is not inconsistent with finding that Prewitt was also using the boat. Prewitt was not being paid; he went on the trip voluntarily, presumably because he thought he would enjoy taking a sailing trip with his friend Hensley. He was availing himself of the boat throughout the trip, putting it to the use for which it was designed, *i.e.* sailing. Moreover, there can be no question that while he was at the helm, Prewitt was controlling, handling, and operating the boat, or in other words, that he was using the boat.

In addition, under a plain reading of in care of, the boat was in care of Prewitt at the time of the accident.[5] In interpreting the term care in commercial general liability policies, courts have

---

[4] Prewitt submits a definition of use as a noun, which includes a requirement that the use be "long-continued." However, the exclusion language does not use the word as a noun, but rather as a participle, and therefore the definition of use as a transitive verb, as quoted above, is more appropriate.

[5] The exclusion is written disjunctively, so it is sufficient for West American to prevail if the boat was *either* being used by *or* in care of Prewitt.

adopted a definition that, "when used in reference to personal property . . . include[s] such concepts as charge, supervision, management, responsibility for or attention to safety and well-being, and temporary keeping for the benefit of the owner." *Neff Towing Serv., Inc. v. United States Fire Ins. Co.*, 652 N.W.2d 604, 610 (Neb. 2002) (quoting *Grana v. Sec. Ins. Group*, 339 N.Y.S.2d 34, 37 (N.Y. Sup. Ct. 1972)). At the time of the accident, Hensley's boat was under the supervision of Prewitt, and Prewitt had responsibility for the safety and well-being of the boat. Hensley was asleep, and Prewitt was the only person who could be considered to be responsible for the boat's safety. In fact, the reason that Hensley needed a second person on board for ocean sailing was that he *could not* be responsible for the safe operation of the boat twenty-four hours a day.

Prewitt has argued that his temporary control of the boat while Hensley slept is insufficient to establish the boat was in his care or being used by him. However, there is nothing in the plain meaning of the applicable phrases to suggest that care or use must be continuous or longstanding, nor is there anything in the policy language that suggests that use or care cannot be a temporary condition. Prewitt cites no cases for the proposition that care or use must be continuous in order for an exclusion such

11

as this to apply.[6]

C.  *Kentucky Case Law Interpreting Similar Provisions*

Three Kentucky cases have dealt with somewhat similar provisions, and none lead the Court to any conclusion other than that dictated by a plain reading of the exclusion.  *See Kemper Nat'l Ins. Co. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869 (Ky. 2002); *Ronalco, Inc. v. Home Ins. Co.*, 606 S.W.2d 160 (Ky. 1980); *United States Fid. & Guar. Co. v. Wells*, 380 S.W.2d 75 (Ky. 1964).  In all three cases, the exclusion was part of a commercial general liability policy, and the policy excluded liability for damage to property in the "care, custody, or control" of the insured.[7]

In the most recent of the three, *Kemper*, a case involving the destruction of whiskey already sold but still in storage at the

---

[6] Prewitt does cite *Couch on Insurance* for the proposition that control must be more than temporary, but that same source recognizes that sometimes "even a momentary exercise of control" is sufficient for the exclusion to apply.  *See* 9 *Couch on Insurance* § 126.22 (3d Ed. 2005) (citing cases holding both ways).  Even if the Court were to hold that temporary control was insufficient to satisfy the language of the exclusion, this would not necessarily lead to a ruling in Prewitt's favor.  Prewitt frames the issue by saying that Prewitt was only in control for only an hour before the accident, but it would be equally accurate to say that Prewitt had been in control fifty percent of the time for three weeks, which makes Prewitt's control seem far less temporary than in Prewitt's characterization.

[7] Thus, the exclusions by their language were broader than the one in Prewitt's policy, but in none of the three cases did the courts elaborate on the different meanings of care, custody, and control, instead reading them as if the entire phrase had a single meaning.

12

distillery, the Kentucky Supreme Court found the exclusion to be unambiguous and held that there would be no coverage, since the whiskey was in the care, control, or custody of the distillery. *See Kemper*, 82 S.W.3d at 873-74. In *Wells*, a car owner brought his car into a mechanic's shop, the owner and the mechanic together worked on welding a new tailpipe onto the car, and the car caught fire and was destroyed. *See Wells*, 380 S.W.2d at 75. The court held that the car was in the control of the mechanic, and therefore that the mechanic's insurance company was not liable for the damage. *See id.* at 75-76.[8] In *Ronalco*, the Kentucky Supreme Court ruled the other way, finding that the outer shell of a furnace was not in the care custody, or control of a contractor hired to repair the inner shell of the furnace. *See Ronalco*, 606 S.W.2d at 162. The court held that "where the property damaged is merely incidental to the property upon which the work is being performed by the insured, the exclusion is not applicable."[9] *Id.*

None of the three cases are particularly instructive to the

---

[8] Although Prewitt has not raised the issue, there is some authority in other jurisdictions for the proposition that for such an exclusion to apply, the insured's control must be exclusive. *See* 46 C.J.S. *Insurance* § 947 (2005) (citing *Caisson Corp. v. Home Indem. Corp.*, 502 N.E.2d 1168 (Ill. App. Ct. 1986)). No Kentucky court has ever announced such a requirement, and *Wells*, which involved a mechanic and car owner simultaneously working on the car, would seem to preclude such a requirement being applied.

[9] Apparently, whether the inner shell of the furnace was under the contractor's control was not at issue on appeal in *Ronalco*.

13

instant motion, differing as they do in their underlying facts. *Ronalco*, the only reported case in which a Kentucky court has ruled that this type of exclusion did not apply, is easily distinguishable. In *Ronalco*, the key distinction for the court was between the inner and outer shells of the furnace; while the inner shell may have been under the control of the contractor who was fixing it at the time, the contractor had no duty to do anything with the outer shell, and the Court held that the outer shell remained in the control of the property owner. *See id.* at 162. Moreover, as a fixture, the furnace remained attached to a piece of realty not owned by the contractor. In contrast, in this case, the dispute concerns purely personal property, and the *entire* boat was under the control of Prewitt at the time of the accident.[10]

The best guidance comes from *Kemper*. *Kemper* confirms that

---

[10] Prewitt raises the argument that even if the boat was in care of or being used by him, Hensley's other personal property on board was not, and therefore that West American has a duty to defend and indemnify him because he is also being sued in state court for damage to that other personal property. He claims that *Ronalco* supports this position, as the court in that case found that the damaged property was "incidental" to the property that the insured was working on. *See Ronalco*, 606 S.W.2d at 162. However, *Ronalco* does not support Prewitt's contention. In *Ronalco* the court drew a distinction between inner and outer shells of a furnace, finding that working on the interior gave the insured no control over the exterior. *See id.* The situation in this case is different; Prewitt was in control of the entire boat. It would be illogical to suggest that the boat was in care of Prewitt, but that the things on board the boat were not in his care. Prewitt was responsible for the safety of the boat, while he was at the helm, and therefore he was responsible for the safety of everything on the boat.

14

although exclusions should generally be read narrowly, "[w]here the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written," and *Kemper* also specifically held that "care, custody, or control" exclusions are unambiguous. *Kemper*, 82 S.W.3d at 873. This Court likewise finds that the terms of Prewitt's exclusion 2(c) are unambiguous, and should be applied as written.

D.   *Case Law from Other Jurisdictions*

Neither party has cited any decisions from other jurisdictions that are directly on point, and the Court has found no case law any more pertinent than the Kentucky cases cited above. However, both parties have cited cases arising out of commercial general liability policies with "care, custody, or control" exclusions.

The Court notes that in several of the cases relied on by Prewitt, the courts begin from the assumption that such policy language is "inherently ambiguous," and thus they proceed in light of the maxim that requires ambiguous contract language to be construed against the insurer. *See, e.g.*, *Happy House Amusement, Inc. v. New Hampshire Ins.* Co., 609 A.2d 1231 (N.H. 1992); *Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc.*, 169 A.2d 509 (N.J. Super. Ct. App. Div. 1961); *Boswell v. Travelers Indem. Co.*, 120 A.2d 250 (N.J. Super. Ct. App. Div. 1956). As the Kentucky Supreme Court has recently determined that "care, custody, or control" exclusions are not ambiguous, *see Kemper*, 82 S.W.3d at 873, cases from other

15

jurisdictions beginning from an opposite presumption are not persuasive.[11]

Prewitt also cites *Glen Falls Insurance Co. v. Fields*, 181 So. 2d 187 (Fla. Dist. Ct. App. 1966), to support his contention that property is in care of the person in ultimate control of it, such as Hensley, rather than in care of the person in immediate physical control. In *Glen Falls*, a contractor rented a crane and a crane operator from the insured in order to have a silo moved, and the contractor's employee supervised and directed the moving of the silo. After the crane failed and the silo was destroyed, the insurer refused to pay, claiming that the silo was in the care, custody, or control of the insured crane operator. The court held that the exclusion did not apply, finding that because the contractor's employee was directing and supervising the crane operator at the time of the accident, and the crane operator stated that he was following those directions, the crane operator was not in control of the silo. *See id.* at 189. Unlike the contractor's employee in *Glen Falls*, however, Hensley was not supervising and directing Prewitt at the time of the accident, but instead was below decks sleeping. Therefore, *Glen Falls* is not sufficiently analogous for the Court to disregard the plain meaning of the

---

[11] In addition to beginning from a presumption of ambiguity inconsistent with Kentucky law, these cases are factually distinguishable from the instant case in the degree of control exercised by the insured.

16

policy exclusion.

## CONCLUSION

Prewitt joined a friend on a sailing trip and was at the helm of the boat when it ran aground. Prewitt and his insurance company contracted to exclude from coverage liability for damage to the property of third parties when that property is in care of or used by Prewitt, and the plain meaning of this exclusion dictates that West American not be held liable for damage to Hensley's boat. Under Kentucky law, an unambiguous policy exclusion such as this must be enforced as written, and therefore the Court finds in favor of Plaintiff West American.

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

(1) That Defendant's motion for reconsideration [Record No. 6] be, and the same hereby is, **DENIED.**

(2) That Plaintiff's motion for summary judgment [Record No. 12] be, and the same hereby is, **GRANTED.**

(3) That pursuant to a valid exclusion in insurance policy number FHW09181309, Plaintiff has no duty to defend or indemnify Defendant in any state court action arising out of the boating accident at Carysfort Reef in June of 2003.

This the 18th day of November, 2005.



Signed By:

*Joseph M. Hood*
United States District Judge

18